Donald E. SABLE, Plaintiff,

v.

**WATSON–WILSON TRANSPORTATION SYSTEM, INC.; Yellow Transit Freight Lines, Inc.; George E. Powell; George E. Powell, Jr.; and Lester H. Brickman, Defendants.**

No. 16824–2.

United States District Court
W. D. Missouri, W. D.

June 7, 1968.

Brady, Drake & Wilson, Dallas, Tex., Lathrop, Righter, Gordon & Parker, Kansas City, Mo., for plaintiff.

Swanson, Midgley, Jones, Eager & Gangwere, Kansas City, Mo., for defendant.

ORDER

COLLINSON, District Judge.

A detailed summary of the pleadings in this case is necessary to an understanding of the unique problem presented to the Court. The plaintiff's petition alleges that the plaintiff is a minority stockholder in the defendant Watson-Wilson Transportation System; that the individual defendants are both directors of this corporation and of the other corporate defendant, Yellow Transit Freight Lines, Inc. Jurisdiction is based upon diversity and the requisite jurisdictional amount.

The petition makes the following allegations:

That on February 2, 1965, Yellow Transit entered into a contract with the majority shareholders of Watson-Wilson to acquire the controlling interest and to obtain authority from the Interstate Commerce Commission to control Watson-Wilson; that both these corporate defendants are licensed common carriers; that the defendants other than Watson-Wilson represented (to whom is not alleged) that there would be no merger of the two companies for at least two years after permanent control was approved; that on March 2, 1965, the Commission granted temporary control and

on June 24, 1966, permanent control was permitted; shortly after temporary control was granted the individual defendants became the directors of Watson-Wilson; on September 16, 1966, these directors called a stockholders meeting of Watson-Wilson to vote on merging with Yellow Transit, and by virtue of controlling over 90% of the stock the merger was approved on a stock exchange basis, over plaintiff's objections.

Plaintiff further alleges that after Yellow Transit assumed temporary control the policies introduced by their chosen directors were designed to, and did, reduce the value of Watson-Wilson assets; that this was done by a number of changes made in both fiscal and operating policies; that these changes resulted in substantial sums of money being unlawfully diverted from Watson-Wilson to Yellow, and that, after request by the plaintiff, the directors of Watson-Wilson have refused to take any action to recover such money.

Plaintiff further alleges that by these actions the directors have breached their fiduciary duties to the stockholders of the Watson-Wilson company and have conspired to defraud that corporation and its minority stockholders in an overall scheme to present false and distorted information to the Commission in the proceedings before it to approve the merger.

The above is a very brief summary of the principal allegations of the petition. The plaintiff prays for an order requiring a true and accurate accounting of all revenues between the two corporations since temporary control was granted, and for a money judgment of $3,250,000.00 in favor of Watson-Wilson against the other defendants; that Yellow Transit and the directors of Watson-Wilson be ordered to provide new accounting information to the Commission to enable it to make a fair and true appraisal of the value of the minority stockholders' stocks in the merger proceeding; that the directors of Yellow Transit be enjoined from continuing to divert revenues from Watson-Wilson and

from making excessive charges for management fees and other charges, from furnishing further information to the Commission based on such previous diversion of revenues, and from continuing to refuse to pay dividends to stockholders of Watson-Wilson. The plaintiff further prays that a receiver be appointed to take control of Watson-Wilson and operate the company and take all necessary steps to correct the alleged damage already done, and cause new accounting information to be prepared and supplied to the Commission; and further prays for attorney fees.

The defendants have filed a motion for summary judgment or, in the alternative, to dismiss this suit. This motion is supported by a very lengthy exhibit of all the proceedings before the Commission, commencing with the order granting permanent control. This exhibit reveals that the Hearing Examiner has held an evidentiary hearing, at which the plaintiff appeared and was represented by counsel, and has filed his report and order recommending the merger and fixing the value of the dissenting stockholders' stocks. The plaintiff and other minority stockholders filed exceptions to this recommended report and have filed two supplemental petitions for further hearing, the last being filed on March 14, 1968. In this last petition, which is denominated "Supplemental Petition of Minority Stockholders For Further Hearing," the plaintiff sets out that he has filed this suit and requests that no further hearing date be fixed before the Commission until this Court acts upon the requested appointment of a receiver, and that, if a receiver is appointed, no hearing be held until the receiver has completed an accounting.

No action has been taken by the Commission upon the Examiner's recommended report and order of November 13, 1967.

In the briefs filed by the parties it is agreed that § 5 of the Interstate Commerce Act (49 U.S.C. § 5) does delegate exclusive and plenary jurisdiction to the

Commission to approve the merger of two or more licensed motor carriers.

The United States Supreme Court held in the case of Schwabacher v. United States, 334 U.S. 182, 68 S.Ct. 958, 92 L.Ed. 1305 (1948), that this jurisdiction includes not only the power but the duty to adjudicate the claims of dissenting stockholders; the duty to protect the minority stockholders' interests in the merger by a determination if the terms are fair as to the minority stockholders; and the power to require the dissenting stockholders to accept for their existing interest its economic equivalent of stock in the merged company.

The defendants insist that the Interstate Commerce Commission has "exclusive" jurisdiction to determine the issues raised in the instant case; that every claim against the defendants for alleged wrong-doing has been tried before the Hearing Examiner and will be determined by the Commission; and that consequently this suit should be dismissed.

The plaintiff contends, on the other hand, that the plaintiff does not seek in any way "to interfere or encroach upon the plenary and exclusive jurisdiction of that Commmission"; that judgment as prayed in the instant suit would not interfere with the Commission's discretion to grant or deny the merger and to determine the terms and conditions of the merger; and that the Commission has no power to grant relief in a derivative stockholders suit, to award damages for breach of directors' fiduciary duties, appoint a receiver, or issue an injunction.

The parties do agree that if the Commission approves the merger, upon conditions fixed by the Commission (including the compensation of this plaintiff and other dissenting stockholders) that such an order is permissive only. In other words, the management of the two carriers could decide not to merge under the conditions imposed by the Commission's order. And, of course, the Commission could refuse to allow a merger under any conditions.

The Court believes that this situation presents the question of "primary jurisdiction" as developed and taught by the United States Supreme Court, first announced in Texas and Pacific R. R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907). That doctrine has been developed by that court and other federal courts by the application or rejection of the doctrine in numerous types of cases, all involving the question of whether the courts or an administrative agency will *initially* decide a particular issue.

> The precise function of the doctrine of primary jurisdiction is to guide a court in determining whether the court should refrain from exercising its jurisdiction until after an administrative agency has determined some question or aspect of some question arising in the proceeding before the court. 3 Davis, Administrative Law Treatise, p. 3, § 19.01.

There are now many reported cases in which this doctrine of primary jurisdiction has been considered. Many of them are cases in which the ICC is the administrative agency involved, and the doctrine has been applied in a number of different situations. A summary of these various types of cases is found in Davis's work on Administrative Law in § 19.02. But in addition to ICC cases the doctrine has been followed by the courts in cases involving the National Labor Relations Board, the National Railroad Adjustment Board, the Civil Aeronautics Board, the Federal Power Commission, and the Federal Communications Commission.

One of the leading cases is from this circuit, McCleneghan v. Union Stock Yards Co. of Omaha, 8 Cir., 298 F.2d 659 (1962). In that case the doctrine was applied to a private antitrust action in which the plaintiff had an administrative remedy before the Secretary of Agriculture under the Packers and Stockyards Act. This case traces the "two-sided" development of the doctrine, on the one hand its application to secure uniformity in regulatory matters within

the jurisdiction of an administrative body, and on the other hand to use the expertise of the administrative body in its particular field.

Extensive research by counsel and the Court have unearthed no cases similar to the factual situation presented here. In United States v. Western Pacific R. Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), the court said—

No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. These reasons and purposes have often been given expression by this Court. In the earlier cases emphasis was laid on the desirable uniformity which would obtain if initially a specialized agency passed, on certain types of administrative questions. \* \* \* More recently the expert and specialized knowledge of the agencies involved has been particularly stressed. \* \* \*

Quoting Professor Davis again—

On the question whether the doctrine applies to problems or relief which are beyond administrative jurisdiction, the theory seems reasonably clear. The test is not whether some parts of the case are within the exclusive jurisdiction of the courts; the test is whether some parts of the case are within the exclusive jurisdiction of the agency. Because of the purpose of the doctrine —to assure that the agency will not be by-passed on what is especially committed to it—and because resort to the courts is still open after the agency has acted, the doctrine applies even if the agency has no jurisdiction to grant the relief sought. Administrative Law Treatise § 19.07.

It is admitted in this case that the agency has the exclusive jurisdiction to fix the value of plaintiff's stock, if the merger is approved. Many of the issues raised in this case bear directly on that question. In addition, some of the questions raised by this complaint, such as the fair division of receipts from inter-line freight and proper or improper "write-off" of assets of a common carrier are particularly within the specialized field and expertise of the agency. The Court feels that the doctrine of primary jurisdiction should be applied under these facts.

On the other hand it is clear from all the cases, and especially the language in the *McCleneghan* case, supra, that since the administrative agency cannot grant the relief sought in this complaint, it would be improper to enter an order of dismissal or for summary judgment, but that this Court should retain jurisdiction and stay these proceedings until the Commission has acted.

Ordered that defendants' motion for summary judgment and motion to dismiss are both denied; that the defendants are ordered to file an answer to the complaint within thirty days from this date; further

Ordered that the application of Local Rule 20 is suspended until further order of the Court, and that all further proceedings in this case are ordered stayed until further order of this Court.